# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| BUZZBALLZ, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 3:22-CV-2187 |
| v. | § | |
| | § | |
| BREW-ALLIANCE, INC. a/k/a | § | |
| BROUE-ALLIANCE, INC. and | § | |
| GELOSO BEVERAGE GROUP, LLC | § | |
| | § | |
| Defendants. | § | |

## ORIGINAL COMPLAINT

Plaintiff BuzzBallz, LLC files this Original Complaint against Defendants Brew-Alliance, Inc. a/k/a Broue-Alliance, Inc. and Geloso Beverage Group, LLC, and respectfully states as follows:

## I.  PARTIES

1.    Plaintiff BuzzBallz, LLC ("BuzzBallz" or "Plaintiff") is a limited liability company duly organized under the laws of the State of Texas with its principal place of business at 2114 McDaniel Drive, Carrollton, Texas 75006.

2.    Defendant Brew-Alliance, Inc. a.k.a. Broue-Alliance, Inc. ("Brew-Alliance") is a corporation organized under the laws of Canada with its principal place of business at 3838 Léman Boulevard, Laval, Quebec H7E1A1, Canada.

3.    Defendant Geloso Beverage Group, LLC ("Geloso") is a limited liability company organized under the laws of Delaware with its principal place of business at 1662 Manitou Road, Rochester, New York 14626.

**PLAINTIFF'S ORIGINAL PETITION**

## II.   JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), (b) because this action involves claims of trademark infringement arising under federal law as well as related claims of unfair competition.

5.      This Court has personal jurisdiction over Defendants Brew-Alliance and Geloso (collectively "Defendants") because Defendants have committed acts which have reasonably foreseeable consequences in Texas, including by distributing, marketing, and selling infringing products to Texas residents in numerous stores throughout Texas and this District.  Defendants also own and/or operate an interactive website where they advertise their products and whereby Texas consumers can submit information in order to be entered into a sweepstakes to win a trip to Austin, Texas.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to BuzzBallz's claims occurred in this District. Defendants have distributed, marketed, and sold infringing products to Texas residents in this District. Venue is further proper in this District because Defendants are subject to personal jurisdiction in this District and deemed to reside here.  *See* 28 U.S.C. § 1391(b)(1), (c).

## III.   FACTUAL ALLEGATIONS

**A.      BuzzBallz and Its Trademarks**

7.      BuzzBallz is a woman-owned business that sells a variety of ready-to-drink alcoholic beverages in unique, brightly-colored containers and cans.

8.      The concept for BuzzBallz was conceived in the mid-2000s by its founder—at the time a high school teacher—who was looking for a convenient way to sip a cocktail on a hot

summer day.  After years of industry research and a substantial financial investment, BuzzBallz was founded in July 2009.

9.     Although BuzzBallz was founded and is based in North Texas, BuzzBallz has grown substantially since its founding, now selling products in all 50 states and internationally. BuzzBallz-branded alcoholic beverages have become the number one ready-to-drink, single-serve cocktails in the United States.  BuzzBallz sells approximately 5 million cases (equating to approximately 120 million BuzzBallz beverages) annually, generating tens of millions of dollars in annual sales.

10.     BuzzBallz's products, which are sold in retail stores and online, including at www.buzzballz.com, consist of high-quality, pre-mixed alcoholic beverages made from natural juices and premium ingredients.

11.     BuzzBallz's products come in a variety of flavors, including tea, lemonade, peach, lemon, and other refreshing tropical and citrus fruit-based flavors.

12.     Some of BuzzBallz's flavors include "Tea-Licious," "PeachBallz," "Stiff Lemonade," "Lemon Tea Chiller," "Peach Chiller," and "Lemon Chiller," among many others.

13.     BuzzBallz's alcoholic beverages are sold in brightly colored packaging with block lettering, and consist of BuzzBallz-branded Cocktails, Chillers, Biggies, and canned BuzzTallz products, as exemplified below:













  

  

14.     BuzzBallz has used its registered trademark, BUZZBALLZ, in association with the marketing and sale of its products since its founding in 2009.  BUZZBALLZ owns U.S. Trademark Registration No. 4,498,235 for its BUZZBALLZ mark, which mark has achieved incontestable status.

15.     BuzzBallz has used its registered trademark, BUZZTALLZ, in association with the marketing and sale of its products since 2018.  BuzzBallz owns U.S. Trademark Registration No. 5,618,458 for its BUZZTALLZ mark.

16.     BuzzBallz also owns several other federal trademark registrations for its "BuzzBallz" and "BuzzTallz" marks, as shown in the chart below:

| Mark | U.S. Reg. No. | Reg. Date | First Use in Commerce |
|---|---|---|---|
| **BUZZBALLZ** | 4,498,235 | Mar. 18, 2014 | Oct. 1, 2009 |
| **BuzzBall** | 3,865,524 | Oct. 29, 2010 | Oct. 1, 2009 |
| **BUZZBALLZ CHILLERS** | 4,810,280 | Sept. 8, 2015 | Apr. 28, 2015 |
| **BUZZBALLZ BIGGIES** | 5,237,465 | Jul. 4, 2017 | Jan. 20, 2017 |
| **BUZZBALLZ SHOOTERZ** | 4,852,822 | Nov. 10, 2015 | Aug. 26, 2015 |
| **BUZZTALLZ** | 5,618,458 | Nov. 27, 2018 | July 24, 2018 |
|  | 4,991,530 | Jul. 5, 2016 | Jul. 16, 2010 |
|  | 5,107,465 | Dec. 27, 2016 | Jul. 16, 2010 |

| | 5,107,464 | Dec. 27, 2016 | Dec. 4, 2013 |
|---|---|---|---|

(collectively the "Registered BUZZBALLZ Marks").

17.    In addition to the Registered BUZZBALLZ Marks, BuzzBallz has numerous pending trademark applications for "BuzzBallz" marks and, through years of hard work, has established considerable common law trademark rights in an assortment of "BuzzBallz" marks (collectively, with the Registered BUZZBALLZ Marks, the "BUZZBALLZ Marks").

18.    BuzzBallz has continuously used the BUZZBALLZ Marks in association with its alcoholic beverage products, marketing materials, website located at www.buzzballz.com, social media pages, and merchandise offerings for more than a decade. BuzzBallz has developed considerable valuable goodwill and brand recognition in association with the BUZZBALLZ Marks throughout the United States (and internationally), including in Texas and this District, where BuzzBallz is headquartered. The consuming public has thus come to associate the BUZZBALLZ Marks with BUZZBALLZ's high-quality alcoholic beverages and product offerings.

19.    BuzzBallz has expended considerable amounts of time, skill, labor, and money designing, developing, promoting, and protecting its rights in the BUZZBALLZ Marks.

**B.    Defendants' Infringement**

20.    Despite the nationwide and international consumer goodwill and brand recognition BuzzBallz has established in the BUZZBALLZ Marks through years of hard work and investment, in February of 2022—years after BuzzBallz began using the BUZZBALLZ Marks on a national

and international scale—Defendants began marketing and selling products under the confusingly similar mark BUZZ TEA (the "Infringing Mark").

21.   Like BuzzBallz, Defendants produce ready-to-drink alcoholic drinks, including alcoholic tea, lemonade, and peach-flavored products, including "Buzz Tea," "Buzz Tea Peach," and "Buzz Tea Half & Half" (half tea, half lemonade), as shown below:

  

22.   Defendants use the word "Buzz" as the primary feature of the Infringing mark, and repeatedly highlight the term throughout their marketing materials, including with phrases such as "What's the Buzz?," "THE BUZZ IS REAL," "START BUZZING!,"and "keep up with the latest Buzz."

23.   Defendants not only market similar products using the confusingly similar Infringing Mark, but also feature similar color schemes, block lettering, and similar flavor choices as authentic BuzzBallz products.  While BuzzBallz offers "Tea-Licious," "Lemon Tea Chiller," "PeachBallz," "Peach Chiller," and "Stiff Lemonade," Defendants offer "Hard Iced Tea," "Peach Iced Tea," and "Hard Tea & Lemonade Flavors."  Defendants' similar products are marketed to the same target audience as authentic BuzzBallz products, making it especially likely that consumers will be confused into believing that Defendants' products are put out by BuzzBallz.

8

24.     Adding to the likelihood of consumer confusion, Defendants' products, like BuzzBallz's BuzzTallz products, are (i) sold in tall aluminum cans, (ii) feature similar bright color schemes, (iii) include dual-tone can designs, (iv) include mono-colored horizontal stripes at the top and bottom of the can, with the upper stripe displaying the product flavor in white, block lettering, and (v) depict the Infringing Mark in block lettering.

25.     Defendants' products featuring the Infringing Mark are also sold and marketed through similar channels of trade as authentic BuzzBallz products, including grocery stores, liquor stores, gas stations, and other retail stores where authentic BuzzBallz products are sold, increasing the likelihood of consumer confusion. BuzzBallz's products and Defendants' infringing products are sold in close proximity in retail stores at a similar price point, thus targeting a similar class of consumers.

26.     Defendants' products, like authentic BuzzBallz products, are also marketed extensively through the internet and social media sites, including Facebook, Twitter, and Instagram.

27.     Defendants have recently registered the domain names buzzteaco.com and spillthebuzztea.com (the "Infringing Domain Names") to market and promote products bearing the Infringing Mark.

28.     Defendants' website located at www.buzzteaco.com features a "Find Buzz Tea" page where consumers can find where to purchase products bearing the Infringing Mark across the United States, including in Texas and this District:





29.     Defendants' website located at www.buzzteaco.com also contains a "Text Us" page where customers from across the country, including Texas, are encouraged to directly communicate with Defendants through text messages and e-mails:



MORE FLAVOR. LESS SUGAR. HIGHER ALC.

HOME

# Text Us!

We've all been there… our drink in one hand, our phone in the other, we unlock it, text (336) 396-6649, and start composing a tipsytext — one we know we'll regret in the morning. Buzz Tea has a solution for this problem that plagues people nationwide!

**Buzz Tea — a spiked iced tea that texts back. Leave those "U up?" messages in 2021…**



**Contact Us**
Text Us: (336) 396-6649
Email Us: BuzzTea@gelosobev.com

**Social Media**

   

30.     Defendants' website located at www.buzzteaco.com further illustrates Defendants' recent adoption of the Infringing Mark and nationwide distribution, stating "Launching in 2022, Buzz Tea is the hard tea sweeping the nation":



31.     Defendants additionally market their products through the interactive website located at www.spillthebuzztea.com, where consumers are invited to enter their information in order to "win a trip to 1 of 3 party cities," including Austin, Texas:





32.    Further evidencing Defendants' intent to use the Infringing Mark on a national

scale, including in Texas, Brew-Alliance applied for a U.S. Trademark Registration for "BUZZ

TEA" (No. 90845121) on July 23, 2021, for the following listing of goods——"Liqueurs; Wine-

based drinks; Wine; Wine coolers being drinks; Alcoholic bitters; Alcoholic cocktail mixes;

Alcoholic coffee-based beverage; Alcoholic cordials; Alcoholic energy drinks; Alcoholic fruit

beverages; Alcoholic fruit cocktail drinks; Alcoholic punches; Alcoholic tea-based beverage;

Alcoholic malt coolers; Hard cider; Prepared wine cocktails; Prepared alcoholic cocktail (Based

on 44(d) Priority Application) Liqueurs; Wine-based drinks; Wine; Wine coolers being drinks;

Alcoholic bitters; Alcoholic cocktail mixes; Alcoholic coffee-based beverage; Alcoholic cordials;

Alcoholic energy drinks; Alcoholic fruit beverages; Alcoholic fruit cocktail drinks; Alcoholic

punches; Alcoholic tea-based beverage; Alcoholic malt coolers; Hard cider; Prepared wine

cocktails; Prepared alcoholic cocktail"—which overlaps with the goods covered by the

BUZZBALLZ Marks, e.g., "Alcoholic beverages except beers; Alcoholic beverages, namely,

13

mixed alcoholic drinks and wine…Alcoholic cocktail mixes," and "Alcoholic beverages containing fruit."   Brew-Alliance's application remains pending.

33.     Further evidencing Defendants' intent to distribute infringing products throughout Texas, Defendant Brew-Alliance recently registered with the Texas Alcoholic Beverage Commission as a non-resident seller of alcoholic beverages.

34.     Defendants' use of the Infringing Mark in connection with their advertising, offering, selling, and providing products in commerce throughout the United States, including Texas, that are marketed to similar consumers and in overlapping channels of trade as authentic BuzzBallz products, is likely to mislead consumers as to the source of Defendants' goods and is likely to cause consumer confusion or mistake, or to deceive consumers into believing that Defendants' products are affiliated with, connected with, associated with, or endorsed by BuzzBallz when they are not.

35.     Defendants were well aware of BuzzBallz and the BUZZBALLZ Marks when they commenced their use of the Infringing Mark.  This conclusion is informed by the following facts: (i) BuzzBallz's widescale, continuous, nationwide use of the BUZZBALLZ Marks predates Defendants' infringement by more than 10 years; (ii) BuzzBallz has long owned numerous publicly-available federal trademark registrations for the BUZZBALLZ Marks, which provide constructive notice of BuzzBallz's rights in the BUZZBALLZ Marks; and (iii) Defendants are sophisticated companies with years of experience in the alcoholic beverage industry, in which BuzzBallz has existed—and flourished as a market leader, no less—for more than a decade. It is therefore inconceivable that Defendants were unaware of BuzzBallz's exclusive rights in the BUZZBALLZ Marks when they commenced their infringement.   Nevertheless, Defendants decided to move forward with marketing and selling their products using the Infringing Mark.

36.     As a consequence of Defendants' ongoing infringement of the BUZZBALLZ Marks and unauthorized use of the confusingly similar Infringing Mark, BuzzBallz has suffered and will continue to suffer irreparable harm, the exact nature, extent, and amount of which cannot be ascertained at this time. Therefore, in addition to damages, BuzzBallz is also entitled to preliminary and permanent injunctive relief.

## IV.   CAUSES OF ACTION

### Count One: Trademark Infringement, 15 U.S.C. § 1114

37.     BuzzBallz reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

38.     BuzzBallz owns the Registered BUZZBALLZ Marks.

39.     BuzzBallz has continuously used the Registered BUZZBALLZ Marks in commerce and has established considerable brand recognition and goodwill with respect to the Registered BUZZBALLZ Marks.

40.     Defendants have sold, offered to sell, and distributed products throughout the United States displaying the Infringing Mark, including through use of Defendants' websites located at www.buzzteaco.com and www.spillthebuzztea.com, through which Defendants market their products using the Infringing Mark.

41.     Defendants have and continue to use in commerce reproductions, counterfeits, copies, and colorable imitations of the Registered BUZZBALLZ Marks in connection with the sale, offering for sale, and distribution of goods, including flavored alcoholic beverages, which use is likely to cause consumer confusion, mistake, and deception in violation of 15 U.S.C. § 1114.

42.     BuzzBallz has no control over the nature or quality of the products sold and offered for sale by Defendants.  Any failure, neglect, or default of Defendants in providing quality goods

to consumers will reflect adversely upon BuzzBallz as the perceived source of origin and/or approval of the products, and may also have potential to harm the consuming public.

43.     BuzzBallz has been damaged and is likely to continue to be damaged by Defendants' infringement of the Registered BUZZBALLZ Marks, and BuzzBallz seeks and is entitled to recover its actual damages, Defendants' profits from the infringement, and the costs of this action pursuant to 15 U.S.C. § 1117(a).

44.     This case is exceptional in light of Defendants' willful use of the Infringing Mark to sell and offer to sell their products throughout the United States despite BuzzBallz's widespread and continuous use of the Registered BUZZBALLZ Marks for several years preceding Defendants' first use of the Infringing Mark. Because this case is exceptional, BuzzBallz is also entitled to recover its attorneys' fees incurred pursuing this action pursuant to 15 U.S.C. § 1117(a).

45.     Defendants' activities have caused and, unless enjoined, will continue to cause irreparable injury to BuzzBallz and the goodwill BuzzBallz has established in its products, brand, and the Registered BUZZBALLZ Marks over the years.

### _Count Two: False Designation of Origin, 15 U.S.C. § 1125(a)_

46.     BuzzBallz reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

47.     BuzzBallz has continuously used the BUZZBALLZ Marks in commerce and has established considerable brand recognition and goodwill with respect to the BUZZBALLZ Marks.

48.     Defendants have sold, offered to sell, and distributed products throughout the United States displaying the Infringing Mark, including through use of Defendants' websites located at www.buzzteaco.com and www.spillthebuzztea.com, through which Defendants market their products using the Infringing Mark.

49.     Defendants' unauthorized use of the Infringing Mark is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, and association of Defendants with BuzzBallz, BuzzBallz's products, and as to the origin, sponsorship, or approval of Defendants' products by BuzzBallz in violation of 15 U.S.C. § 1125(a)(1)(A).

50.     BuzzBallz has no control over the nature or quality of the products sold and offered for sale by Defendants.  Any failure, neglect, or default of Defendants in providing quality goods to consumers will reflect adversely upon BuzzBallz as the perceived source of origin and/or approval of the products, and may also have potential to harm the consuming public.

51.     Defendants' activities have caused and, unless enjoined, will continue to cause irreparable injury to BuzzBallz and the goodwill BuzzBallz has established in its products, brand, and the BUZZBALLZ Marks over the years.

52.     BuzzBallz has suffered and will continue to suffer substantial damage to its brand, reputation, and goodwill, and BuzzBallz seeks and is entitled to recover actual damages, Defendants' profits from the infringement, and the costs of this action pursuant to 15 U.S.C. § 1117(a).

53.     Defendants' conduct constitutes an "exceptional" case under 15 U.S.C. § 1117(a), and BuzzBallz is entitled to recover its attorneys' fees incurred pursuing this action.

### *Count Three: Trademark Dilution, 15 U.S.C. § 1125(c)*

54.     BuzzBallz reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

55.     BuzzBallz is the exclusive owner of the BUZZBALLZ Marks.

56.     The BUZZBALLZ Marks are distinctive and famous within the meaning of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).  The BUZZBALLZ Marks are widely

recognized by the general consuming public of the United States as the designation of the source of BuzzBallz's goods.

57.     Defendants commenced use of the Infringing Mark after the BUZZBALLZ Marks became famous.

58.     Defendants' marketing, distribution, and sale, without authorization from BuzzBallz, of products bearing the Infringing Mark, is diluting the distinctive quality of the BUZZBALLZ Marks and decreasing the capacity of the BUZZBALLZ Marks to identify and distinguish BuzzBallz's products.

59.     Defendants' activities, as alleged herein, both separately and collectively, have diluted or are likely to dilute the distinctive quality of the BUZZBALLZ Marks in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

60.     At all relevant times, on information and belief, Defendants willfully intended to trade on BuzzBallz's reputation and/or to cause dilution of the famous BUZZBALLZ Marks.

61.     BuzzBallz seeks and is entitled to recover injunctive relief, actual damages, Defendants' profits from the infringement, and the costs of this action pursuant to 15 U.S.C. § 1117(a).

62.     Defendants' conduct constitutes an "exceptional" case under 15 U.S.C. § 1117(a), and BuzzBallz is entitled to recover its attorneys' fees incurred pursuing this action.

***Count Four: Cybersquatting, 15 U.S.C. § 1125(d)***

63.     BuzzBallz reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

64.     Defendants have registered, trafficked in, and used the Infringing Domain Names, which are confusingly similar to and dilutive of the BUZZBALLZ Marks and the BuzzBallz

domain name www.buzzballz.com, with a bad faith intent to profit from BuzzBallz's trademark rights in violation of 15 U.S.C. § 1125(d).

65.   As a result of Defendants' actions, BuzzBallz has been damaged.

66.   Pursuant to 15 U.S.C. § 1125(d)(1)(C), BuzzBallz requests that the Court order the transfer of the Infringing Domain Names to BuzzBallz or, alternatively, the forfeiture and/or cancellation of Defendants' registration of the Infringing Domain Names.

67.   BuzzBallz has suffered and will continue to suffer substantial damage to its brand, reputation, and goodwill, and BuzzBallz seeks and is entitled to recover its actual damages, Defendants' profits from the infringement, and the costs of this action pursuant to 15 U.S.C. § 1117(a).

68.   Defendants' conduct constitutes an "exceptional" case under 15 U.S.C. § 1117(a), and BuzzBallz is entitled to attorneys' fees incurred pursuing this action.

### *Count Five: Common Law Trademark Infringement*

69.   BuzzBallz reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

70.   BuzzBallz has been using the BUZZBALLZ Marks throughout the United States continuously for several years in association with its ready-to-drink alcoholic beverages and merchandise.

71.   Without authorization, Defendants recently began using the Infringing Mark in connection with their ready-to-drink alcoholic beverages.

72.   Defendants' use of the Infringing Mark or any confusingly similar variations thereof, is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods are created, manufactured, or distributed by BuzzBallz, or are

associated or connected with BuzzBallz, or have the sponsorship, endorsement, or approval of BuzzBallz, when they do not.

73.     Defendants' actions demonstrate a willful intent to trade on the goodwill associated with the BUZZBALLZ Marks.

74.     As such, Defendants' activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to BuzzBallz's goodwill and reputation, for which BuzzBallz has no adequate remedy at law.   Furthermore, BuzzBallz has suffered and will continue to suffer substantial damages while Defendants have reaped substantial profits.

75.     BuzzBallz is entitled to injunctive relief and to recover Defendants' profits, as well as Defendants' actual damages and costs and fees incurred in connection with this action, in an amount to be determined at trial.

### Count Six: Unfair Competition By Misappropriation

76.     BuzzBallz reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

77.     BuzzBallz developed the BUZZBALLZ Marks through the expenditure of extensive time, skill, labor, and money.   In connection with the marketing and sale of their goods bearing the Infringing Mark, Defendants have exploited the reputation and goodwill associated with the BUZZBALLZ Marks in competition with BuzzBallz to gain a competitive advantage.

78.     By these actions, Defendants have gained a financial benefit for themselves and have caused harm to BuzzBallz's brand, goodwill, and reputation, causing BuzzBallz to suffer damages.

79.     BuzzBallz is entitled to injunctive relief and to recover Defendants' profits, as well as Defendants' actual damages and costs and fees incurred in connection with this action, in an amount to be determined at trial.

### *Count Seven: Dilution under Texas Law, Tex. Bus. & Comm. Code § 16.103*

80.     BuzzBallz reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

81.     BuzzBallz is the exclusive owner of the BUZZBALLZ Marks.

82.     The BUZZBALLZ Marks are distinctive and famous within the meaning of Texas Business and Commerce Code § 16.001, *et seq.*  The BUZZBALLZ Marks are widely recognized by the general consuming public of the State of Texas, and in geographic areas within the State of Texas, as the designation of the source of BuzzBallz's goods.

83.     Defendants commenced use of the Infringing Mark after the BUZZBALLZ Marks became famous.

84.     Defendants' marketing, distribution, and sale, without authorization from BuzzBallz, of products bearing the Infringing Mark, is diluting the distinctive quality of the BUZZBALLZ Marks, and decreasing the capacity of the BUZZBALLZ Marks to identify and distinguish BuzzBallz products.

85.     Defendants' activities, as alleged herein, both separately and collectively, have diluted or are likely to dilute the distinctive quality of the BUZZBALLZ Marks in violation of Texas Business and Commerce Code § 16.103.

86.     At all times, on information and belief, Defendants willfully intended to trade on BuzzBallz's reputation and/or to cause dilution of the famous BUZZBALLZ Marks.

87.     BuzzBallz seeks and is entitled to recover injunctive relief and, because Defendants' acted willfully, an amount up to three times BuzzBallz's actual damages and Defendants' profits from the infringement, the costs of this action, and BuzzBallz's attorneys' fees incurred pursuing this action pursuant to Texas Business and Commerce Code §§ 16.103(c) and 16.104.

## V.   REQUEST FOR INJUNCTIVE RELIEF

88.     BuzzBallz reincorporates by reference the allegations in the foregoing paragraphs, inclusive, as if the same were set out here in full.

89.     Defendants have violated 15 U.S.C. §§ 1114 and 1125(a), (c), committed common law trademark infringement, and unfairly competed with BuzzBallz under Texas law, and BuzzBallz is therefore entitled to injunctive relief under 15 U.S.C. § 1116 and under Texas law.

90.     BuzzBallz requests that the Court issue preliminary and permanent injunctive relief enjoining Defendants and their officers, directors, agents, employees, successors, assigns and attorneys, and all other persons and entities in active concert or participation with Defendants who receive notice of the injunction, from doing, aiding, causing or abetting the following:

(a)     engaging in any acts or activities directly or indirectly calculated to trade upon the BUZZBALLZ Marks or BuzzBallz's reputation and goodwill, including any further use of the Infringing Mark or any other marks that are identical or confusingly similar to the BUZZBALLZ Marks in any physical or electronic medium, including, but not limited to product packaging, websites, internet metadata, domain names, business names, assumed business names, apparel, accessories, letterhead, social media sites, podcasts, and other written, audio, or visual materials of any nature;

22

(b)      applying for or pursuing a U.S. federal or state trademark registration for the Infringing Mark or any other mark that is identical or confusingly similar to the BUZZBALLZ Marks;

(c)      directly or indirectly using in commerce a reproduction, counterfeit, copy, or colorable imitation of the BUZZBALLZ Marks or packaging in connection with the sale, offering for sale, or distribution, of any goods and/or services;

(d)      directly or indirectly using any false designation of origin, false or misleading description of fact, or false or misleading representation of fact in connection with the sale of Defendants' products or services, including any representation that Defendants' are affiliated with BuzzBallz;

(e)      passing off, inducing or enabling others to sell or pass off, as products or services produced by or for or distributed with authorization of BuzzBallz, any product or service that is not the product or service of BuzzBallz, is not produced under the control or supervision of BuzzBallz, is not approved by BuzzBallz, or is not distributed with BuzzBallz's express authorization;

(f)      Selling, offering to sell, or distributing products that incorporate, include, or display the Infringing Mark, or any other mark that is confusingly similar to the BuzzBallz Marks; and

(g)      otherwise engaging in competition unfairly.

91.      BuzzBallz will suffer immediate and irreparable damage, injury and harm for which there is no adequate remedy at law if Defendants are not immediately and permanently enjoined from the conduct listed above.

92.     Public policy favors the protection of intellectual property rights and the prevention of unfair competition, and any injunctive relief granted herein will therefore be in accordance with public policy.

93.     The potential damage to BuzzBallz if the injunctive relief requested herein is not granted far outweighs any harm that Defendants will suffer as a result of the injunctive relief requested.  Immediate and permanent injunctive relief is therefore appropriate.

## VI.  <u>JURY DEMAND</u>

94.     BuzzBallz hereby demands a trial by jury of all claims so triable.

## VII.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, BuzzBallz prays that the Court grant the following relief:

1.     Order that Defendants and their officers, directors, agents, employees, successors, assigns and attorneys, and all persons and entities in active concert or participation with Defendants who receive notice of the injunction, be enjoined and restrained preliminarily during the pendency of this action, and then permanently, from doing, aiding, causing, or abetting any of the following:

> (a)     engaging in any acts or activities directly or indirectly calculated to trade upon the BUZZBALLZ Marks or BuzzBallz's reputation and goodwill, including any further use of the Infringing Mark or any other marks that are identical or confusingly similar to the BUZZBALLZ Marks in any physical or electronic medium, including, but not limited to product packaging, websites, internet metadata, domain names, business names, assumed business names, apparel, accessories, letterhead, social media sites, podcasts, and other written, audio, or visual materials of any nature;

24

(b)      applying for or pursuing a U.S. federal or state trademark registration for the Infringing Mark or any other mark that is identical or confusingly similar to the BUZZBALLZ Marks;

(c)      directly or indirectly using in commerce a reproduction, counterfeit, copy, or colorable imitation of the BUZZBALLZ Marks or packaging in connection with the sale, offering for sale, or distribution, of any goods and/or services;

(d)      directly or indirectly using any false designation of origin, false or misleading description of fact, or false or misleading representation of fact in connection with the sale of Defendants' products or services, including any representation that Defendants' are affiliated with BuzzBallz;

(e)      passing off, inducing or enabling others to sell or pass off, as products or services produced by or for or distributed with authorization of BuzzBallz, any product or service that is not the product or service of BuzzBallz, is not produced under the control or supervision of BuzzBallz, is not approved by BuzzBallz, or is not distributed with BuzzBallz's express authorization;

(f)      Selling, offering to sell, or distributing products that incorporate, include, or display the Infringing Mark, or any other mark that is confusingly similar to the BuzzBallz Marks; and

(g)      otherwise engaging in competition unfairly.

2.      Order Defendants to file with the Court and serve upon counsel for BuzzBallz within thirty (30) days after the entry of the injunction prayed for in this Complaint, a written report, sworn to under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

3.       Pursuant to 15 U.S.C. § 1125(d)(1)(C), order Defendants to transfer the registration of the Infringing Domain Names to BuzzBallz or, alternatively, order the forfeiture or cancellation of the Infringing Domain Names.

4.       Award BuzzBallz its actual damages, which may be trebled in the Court's discretion, resulting from Defendants' infringement;

5.       Order Defendants to account for and pay to BuzzBallz all profits derived by reason of Defendants' acts alleged in this Complaint, which may be trebled in the Court's discretion, and to disgorge such profits to BuzzBallz;

6.       Find that this is an "exceptional" case pursuant to 15 U.S.C. § 1117;

7.       Award BuzzBallz its costs of suit, including reasonable and necessary attorneys' fees and expenses pursuant to 15 U.S.C. § 1117;

8.       Award BuzzBallz pre-judgment and post-judgment interest at the highest legal rate on all sums awarded in the Court's judgment; and

9.       Award BuzzBallz such other and further relief to which it may be entitled at law or in equity.

Respectfully submitted,


HAYNES AND BOONE, L.L.P.

/s/ *Jason P. Bloom*
Jason P. Bloom
jason.bloom@haynesboone.com
State Bar No. 24045511
One Victory Park
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940

Michael J. Lambert
michael.lambert@haynesboone.com
State Bar No. 24128020
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone: (512) 867-8400
Facsimile: (512) 867-8470

**ATTORNEYS FOR PLAINTIFF**
**BUZZBALLZ, LLC**